Crew, J.
If, in this case, upon the facts proven, the circuit court was warranted in finding as matter of law, “That the business of receiving and keeping dead bodies as carried on by the said defendants at said place known as 1264 Willson avenue, constitutes the establishing, keeping and maintaining of a morgue within the provisions of Section 3586a of the Revised Statutes of the state of Ohio,” then plaintiffs below were entitled to the relief prayed for, and should have had judgment in their favor abating said morgue. But, on the other hand, if the above finding of the circuit court was erroneous and unwarranted, then upon this record, there being no finding that *286 the place was a nuisance per se, nor evidence to support such finding, plaintiffs were not entitled to .any relief, and their petition should have been dismissed. So that, from whatever view-point this record may be considered, it must we think be conceded that the judgment and decree as made and entered by the circuit court in this case is erroneous, and is the result of an endeavor on the part of the court to arbitrate, rather than to adjudicate, the matters in dispute between the parties. Upon the present record, then, the single question material for our consideration, and the one that is determinative of the rights of the parties hereto, is: Do the facts proven sustain and justify the conclusion of the circuit court that defendants were keeping and maintaining a morgue at No. 1264 Willson avenue, contrary to the provisions of Section 3586a, Revised Statutes? This section, so far as its provisions are pertinent here, is as follows: “It shall be unlawful for any person or persons, company, association or firm to establish a morgue on any street or part of a street upon which are dwelling-houses, unless the owner or occupants of such dwelling-houses within two hundred yards (200 yards) of said proposed morgue give their written consent thereto.” What, then, is a morgue within the purview and meaning of the above section? In the interpretation of this section, the word morgue being without definition in the statute itself is to be given its usual, ordinary and commonly accepted meaning, and the Legislature must be held to have employed and used it in that sense. The word is defined by standard lexicographers and dictionaries as follows:
*287 Black’s Law Dictionary — Morgue. A place where the bodies of persons found dead are kept for a limited time and exposed to view, to the end that their friends may identify them.
Rapalje and Lawrence’s Law Dictionary— Morgue. A place where the bodies of persons found dead are kept for a limited time, to the end that their friends may identify and claim them.
Century Dictionary — Morgue (a transferred use of old French Morgue, in the Chastelet of Paris; a certain chair wherein a new-come prisoner is set and must continue some hours without stirring either head or hand, that the keeper’s ordinary servants may the better take notice of face and favor). Cottgrave. A place where the bodies of persons found dead are exposed that they may be claimed by their friends; a dead-house.
Standard Dictionary of the English Language —Morgue. A place where corpses of persons found dead are exposed for identification; a dead-house.
Webster’s International Dictionary of the English Language — Morgue. A place where the bodies of persons found dead are exposed that they may be identified or claimed by their friends,; a dead-house.
Thesaurus Dictionary of the English Language by Professor March — Life—Funeral. Page 605. Morgue. A place where the corpses of persons found dead are exposed for identification.
Encyclopedic Dictionary — Morgue. A place where the bodies of persons found dead are exposed in order that they may be recognized and claimed by their friends; a dead-house.
*288 From the foregoing definitions we must conclude that the word morgue, in common parlance, is used to designate or describe a place where the bodies of unidentified dead are kept and exposed to view. for the purpose of identification or that they may be claimed by their friends. And there is nothing in Section 3586a to indicate that the word as therein used was employed in any other or different sense, or that the Legislature intended to give to it, or that it should have as therein used, a different- or more comprehensive meaning. Applying then this definition or test, were the defendants below keeping or maintaining a morgue in or upon their premises at No. 1264 Willson avenue? In the present case this is not to be determined solely upon the facts stated by the circuit court, for complaint was made in that court, and is here made, by counsel for plaintiff in error, that the findings of fact as made and stated by the circuit court are incomplete, indefinite and misleading, that material and controlling facts established by the evidence are omitted therefrom, and that the facts found are so imperfectly stated, or stated by the court in such manner, as to be misleading. And counsel have presented to this court with their petition in error a bill of exceptions containing the whole of the evidence introduced on the trial of this cause in the circuit court. An examination of this bill shows the following facts established by the evidence without contradiction: Prior to July 5th, 1903, Julius and William Koebler were engaged in the undertaking business in the city of Cleveland. On that date, having theretofore purchased the house and premises at No. 1264 Willson *289 avenue, they established their said undertaking business at that place. In the house situated on said premises, which house had formerly been a dwelling-house, they selected, fitted up and thereafter maintained a certain room or place which they called the chapel, in which from time to time funeral services were held and conducted, and in which the bodies of deceased persons received by them were temporarily placed and kept until their interment. From July 5th, 1903, to the time of the trial of this 'case in the circuit court, which was more than a year and five months, the total number of bodies received by them was twenty-six (26). Of these all but three had been prepared for burial before being taken-to defendants’ place of business, and all were taken there at the instance or request of relatives or friends of the deceased that funeral services might be held and conducted from that place. These bodies when at their establishment were placed in, caskets, were kept in this chapel, or a private room adjoining the same, and were not exposed to public view except perhaps at-the time when funeral services were being conducted over the remains. No unidentified or derelict body was ever in their place, and while, as found by the circuit court, bodies were taken to defendants’ place of business from hospitals, railroad depots and private residences, yet in every instance they were, as above stated, taken there at the request of relatives or friends, and in order that funeral services might be conducted and held at that place. That which was done by defendants in this behalf was not different from that done by persons conducting modern undertaking establishments in all the *290 large cities of the state. These facts being undisputed, the finding and conclusion by the circuit court that the business of receiving and keeping dead bodies as carrried on by defendants at their place, No. 1264 Willson avenue, constituted the establishing, keeping and maintaining a morgue, was, we think, unwarranted and erroneous.
We believe that the word morgue as found in this section was advisedly used by the Legislature, and that it clearly and appropriately defines and expresses the legislative intent as to the character of place intended to be prohibited; namely: a place where the unidentified and derelict dead are at all times received and kept and exposed to public view for the purposes of identification, thereby inviting and attracting to such place crowds of the morbid and curious who visit the place for no other purpose than that they may view the bodies there exposed. But in the absence of language requiring such construction, we can not think that the prohibition of this section was directed against, or was intended to include, the ordinary undertaking establishment conducted in the usual and customary way. If such had been the intention of the Legislature, it was easy to have expressed that intention in plain and unmistakable terms, but no such intention is expressed. The judgment of the circuit court will be reversed and the petition of the plaintiffs below, defendants in error here, will be dismissed.

Judgment reversed and petition dismissed.

; Shauck, C. J., Price, Summers, Spear and Davis, JJ., concur.